**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **ERIC BRANDON** | ) | |
| | ) | **JURY DEMAND** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO:** |
| | ) | |
| **GENERAL MOTORS LLC** | ) | **Judge** |
| | ) | |
| **Defendant.** | ) | **Magistrate Judge** |

# COMPLAINT AND DEMAND FOR JURY TRIAL

## I. NATURE OF THE CASE

1. Plaintiff, Eric Brandon ("Brandon"), by counsel, brings this action against Defendant, General Motors LLC ("General Motors" or "Defendant"), for violations of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101 *et seq*. ("ADA").

## II. PARTIES

2. Brandon is a resident of Maury County, Tennessee and resided within the geographical boundaries of the Middle District of Tennessee during his employment by Defendant at its manufacturing facility located in Spring Hill, Tennessee.

3. Defendant is a limited liability company that routinely conducts business within the geographical boundaries of the Middle District of Tennessee, including at its manufacturing assembly facility in Spring Hill, Maury County, Tennessee.

## III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1343; and 42 U.S.C. § 12117.

5. Defendant is an "employer," as that term is defined by 42 U.S.C. § 12111(5)(A).

6. Brandon was an "employee," as that term is defined by 42 U.S.C. § 12111(4).

7. At all relevant times, Brandon was an individual with a "disability," as that term is defined under 42 U.S.C. § 12102. Defendant was aware of Brandon's disability, had a written record of Brandon's disability, and/or regarded Brandon as disabled.

8. Brandon satisfied his obligation to exhaust his administrative remedies, having timely filed a Charge of Discrimination (Charge No. 494-2025-05135) on or around April 17, 2026 with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant alleging discrimination based on disability and retaliation. Brandon received the required Notice of Right to Sue on April 27, 2026, and timely files this action.

9. A substantial part of the events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Columbia Division of the Middle District of Tennessee; thus, venue is proper in this Court.

## IV. FACTUAL ALLEGATIONS

10. Brandon was hired by the Defendant on October 10, 2022, as a Global Manufacturing Systems ("GMS") Lead at its Lake Orion, Michigan facility. During all relevant time periods, Brandon met or exceeded Defendant's legitimate performance expectations.

11. In or around 2023, Brandon transferred to Defendant's Spring Hill, Tennessee facility and continued as a GMS Lead.

12. Beginning on or about June 26, 2023, a high-ranking executive at the Spring Hill facility ("the Executive") subjected Brandon to repeated physical and sexual assaults on the plant floor. Brandon promptly reported these incidents to the Defendant's Human Resources ("HR") department. The Defendant conducted no investigation, imposed no discipline on the Executive, and took no steps to separate him from Brandon.

15. On or about November 15, 2023, within weeks of Brandon's reports of the assaults, the Defendant demoted him from his GMS Lead position to a Launch Coordinator role, citing alleged performance deficiencies. In late November 2023, Brandon was diagnosed with Post-Traumatic Stress Disorder ("PTSD") as a direct result of the workplace assaults. Brandon's PTSD substantially limits one or more major life activities, including working, sleeping, and concentrating. During this same period, Brandon's supervisor also discouraged him from scheduling a necessary medical procedure and made comments suggesting his pre-existing Ulcerative Colitis was affecting his performance.

16. In the months following his demotion, Brandon requested accommodations from the Defendant, including a transfer to another GM facility or a remote work arrangement. The Defendant denied each request. On January 24, 2024, Brandon filed a Charge of Discrimination with the EEOC against Defendant, alleging disability discrimination and retaliation. Following his return from leave in the fall of 2024, the retaliation against Brandon escalated.

17. On June 3, 2024, Brandon submitted a formal written reasonable accommodation request to the Defendant's HR requesting relocation to another GM facility. The Defendant redirected Brandon to complete a form and took no further action. No meaningful interactive process followed.

18. Brandon took a leave of absence for treatment of his PTSD. Upon his return in the fall of 2024, coworkers warned him that the Executive intended to return and target him, which Brandon reported to his supervisor. Brandon also applied for two internal positions for which he was qualified but was not selected for either. In or around November 2024, Brandon discovered he had been placed in a below-grade position with no defined metrics or performance standards.

In or around mid-January 2025, Brandon experienced an acute PTSD episode and was placed on additional medical leave.

19. As Brandon prepared to return to work on March 17, 2025, his physician transmitted leave documentation to the Defendant's third-party leave administrator, Sedgwick, on multiple occasions. Sedgwick repeatedly denied receipt and withheld Brandon's disability pay since December 31, 2024. Brandon contacted GM's HR on multiple occasions seeking assistance in resolving Sedgwick's failures.

20. On March 14, 2025, the Defendant confirmed Brandon's return to work for March 17 and that his withheld disability pay would be processed. That same afternoon, the Defendant reversed course, instructing Brandon not to report to work based on an unsubstantiated allegation that he had made threatening statements. Brandon denies making any such statements. The Defendant conducted no investigation before revoking Brandon's return-to-work authorization.[1]

21. The Defendant placed Brandon on unpaid leave from March 2025 through September 2025. During this six-month period, Brandon was free of medical restrictions and was ready, willing, and able to return to work but was denied the opportunity to do so solely because of the Defendant's unsubstantiated allegation. Brandon's medical coverage through the Defendant remained in place throughout this period and throughout all prior periods of leave.

22. On April 7, 2025, Reedy sent Brandon a medical accommodation assessment form addressed to his personal healthcare provider and requiring completion within 14 days. The form cited statements drawn from Brandon's own confidential medical treatment notes, obtained

---

[1] Paragraphs 10 through 20 above are included to establish Defendant's pattern and practice of disability discrimination, retaliation, and failure to accommodate, and to provide context for the adverse employment actions described in the paragraphs that follow. Brandon's applicable 300-day limitations period, measured from his EEOC Charge filed on or about April 17, 2026, began on approximately June 21, 2025. Events occurring before that date are not asserted as independent bases for relief but are offered to demonstrate Defendant's ongoing discriminatory conduct and intent.

through the disability claims process, as the basis for the Defendant's stated concern that Brandon posed a "direct threat." Brandon disputes that he made any threatening statements and disputes the Defendant's use of his private medical records to justify keeping him off work.

23. From approximately September 2025 through February 2026, Brandon was placed on short-term disability leave due to the cumulative effects of his PTSD and a severe flare-up of his pre-existing Ulcerative Colitis, a condition his treating physicians attributed to the accumulated stress caused by the Defendant's actions. During this period, The Defendant's benefits administrator deducted medical premium arrearages from Brandon's disability pay, further compounding his financial hardship. In August 2025, the Defendant informed Brandon that it considered him no longer qualified to perform the duties of his position due to his disability and placed him in an internal job search to identify an alternative role; no alternative position was identified.

24. On December 16, 2025, the Defendant sent Brandon written correspondence proposing to end his employment, citing its erroneous belief that Brandon had obtained employment elsewhere. Brandon responded in writing the same day, specifically correcting the record: he had not commenced employment with any other employer; any prior employment discussions were exploratory and non-binding and had not resulted in any employment relationship; and he remained on approved leave from the Defendant with full intent to return to work. Defendant acknowledged receipt of Brandon's written correction.

25. However, on or about March 4, 2026, The Defendant mailed Brandon a termination letter signed by Spring Hill HR/LR, stating that he had been unable to perform his work duties; that the Defendant had conducted an extensive job search and found no available positions matching Brandon's qualifications and restrictions; and that his employment was

terminated effective March 4, 2026. The letter directed Brandon to return all GM assets by March 11, 2026.

26. As a direct and proximate result of the Defendant's unlawful conduct, Brandon has suffered and continues to suffer damages, including lost wages and benefits, emotional distress, humiliation, and other damages as will be proven at trial.

## V. CAUSES OF ACTION

### COUNT I: ADA – DISABILITY DISCRIMINATION

27. Brandon hereby incorporates paragraphs one (1) through twenty-six (26) of his Complaint as if the same were set forth at length herein.

28. Brandon suffers from a disability. Defendant was aware of Brandon's disability and/or regarded him as a disabled individual and/or has a written record of Brandon's disability.

29. Defendant violated Brandon's rights as protected by the ADA by discriminating against him on the basis of his disability, failing to reasonably accommodate his disability, and terminating his employment.

30. Defendant's actions were intentional, willful, and taken in reckless disregard of Brandon's rights as protected by the ADA.

31. Brandon suffered damages as a result of Defendant's unlawful actions.

### COUNT II: ADA – DISABILITY RETALIATION

32. Brandon hereby incorporates paragraphs one (1) through thirty-one (31) of his Complaint as if the same were set forth at length herein.

33. Brandon suffers from a disability.

34. Brandon engaged in protected activity on multiple occasions by requesting reasonable accommodations for his disability and by reporting to his employer the workplace incidents that gave rise to his disability.

35. Defendant retaliated against Brandon for engaging in protected activity by demoting him, placing him on unpaid leave, failing to engage in the required interactive process, and ultimately terminating his employment.

36. Defendant's actions were intentional, willful, and taken in reckless disregard of Brandon's rights as protected by the ADA.

37. Brandon has suffered damages as a result of Defendant's unlawful actions.

## VI. REQUESTED RELIEF

WHEREFORE, Plaintiff, Eric Brandon, respectfully requests that this Court enter judgment in his favor and award him the following relief:

a. Permanently enjoin Defendant from engaging in any employment policy or practice that discriminates against an employee based on disability;

b. Reinstate Plaintiff to his previous position with concomitant pay, salary, and benefits or award front pay in lieu thereof;

c. Award Plaintiff all wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful conduct, including but not limited to lost wages for the period of unlawful unpaid leave from March 2025 through September 2025 and ongoing lost wages after his termination on March 4, 2026;

a. Award Plaintiff compensation for any and all other damages suffered as a consequence of Defendant's unlawful action(s);

b. Award Plaintiff compensatory damages for violation(s) of the ADA, including payment for mental, emotional, and physical suffering;

c. Award Plaintiff punitive damages for Defendant's violation(s) of the ADA;

d. Award Plaintiff all costs and attorney's fees incurred as a result of bringing this action;

e. Award Plaintiff pre- and post-judgment interest on all sums recoverable; and

f. Award Plaintiff all other legal and/or equitable relief this Court sees fit to grant.

Respectfully Submitted,

*/s/Rachel Ringer*
Rachel Ringer, TBPR No. 041951
Kyle F. Biesecker, TBPR No. 028872
BIESECKER DUTKANYCH & MACER, LLC
3200 West End Ave., Suite 500
Nashville, TN 37202
Telephone: (615) 783-1602
Email: rringer@bdlegal.com
kfb@bdlegal.com

*Counsel for Plaintiff, Eric Brandon*

**DEMAND FOR JURY TRIAL**

Plaintiff, Eric Brandon, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully Submitted,

*/s/Rachel Ringer*
Rachel Ringer, TBPR No. 041951

Kyle F. Biesecker, TBPR No. 028872
BIESECKER DUTKANYCH & MACER, LLC
3200 West End Ave., Suite 500
Nashville, TN 37202
Telephone: (615) 783-1602
Email: rringer@bdlegal.com
kfb@bdlegal.com

*Counsel for Plaintiff, Eric Brandon*